**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

YOLANDA D. COBIA,
                    Appellant,

        v.

DEPARTMENT OF VETERANS
   AFFAIRS,
                    Agency.

DOCKET NUMBER
PH-0752-16-0283-X-1

DATE: January 6, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Yolanda D. Cobia</u>, New Castle, Delaware, pro se.

<u>Stephen M. Pahides</u>, Esquire, Philadelphia, Pennsylvania, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1      This compliance proceeding was initiated by the appellant's petition for enforcement of the Board's September 30, 2016 decision in *Cobia v. Department*

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

*of Veterans Affairs*, MSPB Docket No. PH-0752-16-0283-I-1, in which the administrative judge accepted the parties' settlement agreement into the record for enforcement purposes. *Cobia v. Department of Veterans Affairs*, MSPB Docket No. PH-0752-16-0283-I-1, Initial Appeal File (IAF), Tab 28, Initial Decision (ID). On August 14, 2017, the administrative judge issued a compliance initial decision finding the agency not in compliance with the Board's September 30, 2016 decision. *Cobia v. Department of Veterans Affairs*, MSPB Docket No. PH-0752-16-0283-C-1, Compliance File (CF), Tab 17, Compliance Initial Decision (CID). For the reasons discussed below, we find the agency in compliance and DISMISS the petition for enforcement.

## DISCUSSION OF ARGUMENTS AND EVIDENCE ON COMPLIANCE

¶2     On April 25, 2016, the appellant filed an individual right of action (IRA) appeal alleging that her March 9, 2016 removal from the position of Voucher Examiner constituted reprisal for her whistleblower disclosures. IAF, Tab 1 at 2. On September 30, 2016, the administrative judge, pursuant to a settlement between the parties, issued an initial decision that dismissed the appeal as settled and accepted the settlement agreement into the record for enforcement purposes. ID at 1-2. In relevant part, the settlement agreement called for the agency to: (1) purge from appellant's electronic Official Personnel File (eOPF) all references to her March 29, 2016 removal; and (2) retroactively restore her employment for the period of March 29 through July 23, 2016, along with providing her all pay, leave, and other benefits for that period of time. IAF, Tab 27 at 5-6. The initial decision became the final decision of the Board on November 4, 2016, when neither party petitioned for administrative review. ID at 3.

¶3     On November 15 and December 9, 2016, the appellant filed two petitions for enforcement of the settlement agreement (in the same proceeding). CF, Tabs 1, 4. In her petitions, the appellant alleged that the agency had not yet

purged all references to her removal from her eOPF and had not yet retroactively restored her employment and benefits. CF, Tab 1 at 4-7, Tab 4 at 4-6. On August 14, 2017, the administrative judge found the agency not in compliance with the settlement agreement. CID at 1-8. The administrative judge found that the agency had failed to issue a corrected Standard Form 50 (SF-50) or to restore the appellant's benefits for the relevant time period. CID at 6. The administrative judge ordered the agency to "issue a corrected SF-50 and restore the appellant's benefits for the relevant time period" within 30 days of the date of the compliance initial decision. CID at 8.

¶4      On September 18, 2017, in response to the compliance initial decision, the agency submitted the declaration of an agency Human Resources Specialist, along with supporting documentation. *Cobia v. Department of Veterans Affairs*, MSPB Docket No. PH-0752-16-0283-X-1, Compliance Referral File (CRF), Tabs 1-3. The declaration and supporting documentation reflected that the agency had issued an SF-50 showing that the appellant resigned from her Voucher Examiner position effective July 23, 2016, and that the agency uploaded this SF-50 into the appellant's eOPF. CRF, Tab 1 at 4, Tab 2 at 4. The declaration also generally referenced the appellant's back pay for the period of March 29 through July 23, 2016, and a "spreadsheet filed in the MSPB e-appeal system" pertaining to such back pay. CRF, Tab 1 at 4. However, it was unclear from the agency's spreadsheets how the agency calculated the amount of back pay due to the appellant, the total amount of gross or net back pay that the agency determined was due to the appellant, and whether the agency actually provided the appellant with any back pay. CRF, Tab 3. Additionally, although the declaration generally referenced annual leave, sick leave, and Thrift Savings Plan (TSP) contributions due to be restored to the appellant, the agency did not articulate the total amounts of annual leave, sick leave, and TSP contributions due to the appellant under the settlement agreement, did not set forth its methodology for calculating those amounts, and did not state whether it actually provided the leave and TSP

contributions to the appellant. CRF, Tab 1 at 5. Finally, the declaration asserted that the agency had submitted a "Remedy Ticket" to the Defense Finance and Accounting Service (DFAS) inquiring why deductions for Federal Employees Health Benefits (FEHB) and Federal Employees Group Life Insurance (FEGLI) premiums were not taken from an unspecified "settlement amount" provided to the appellant and that the agency was awaiting a response from the DFAS. *Id.* at 5-6.

¶5        On January 18, 2018, the Clerk of the Board issued an order explaining that the agency's response was insufficient to determine whether the agency was in compliance with the settlement agreement. CRF, Tab 5 at 4. The Clerk of the Board directed the agency to submit detailed narrative explanations setting forth how the agency calculated the appellant's back pay and benefits. *Id.* at 4-6. The order specified that the detailed narrative explanations should include information regarding: (1) the total amount of gross and net back pay, annual and sick leave, and TSP contributions due to the appellant; (2) the total amount of any FEHB or FEGLI premiums that should have been deducted from payments due to the appellant under the settlement agreement; and (3) whether either the agency or the DFAS intended to seek to recover any overpayment to the appellant as a result of the failure to deduct the FEHB or FEGLI premiums from payments due to the appellant under the settlement agreement. *Id.* Finally, the order directed the agency to submit evidence that it had actually provided the appellant with the back pay and benefits referenced in the detailed narrative explanations and supporting documentation. *Id.* at 4-5.

¶6        On February 22, 2018, the agency submitted a response to the Clerk of the Board's January 18, 2018 Order. CRF, Tab 8. The agency did not submit the detailed narrative explanations required by the order but, instead, referenced the previously submitted declaration and asserted that "a more detailed explanation is not possible unless produced by the original custodian of this information, namely the [DFAS]." *Id.* at 5. The agency also submitted several documents with its

response, which it contended pertained to "new information" that was "recently obtained from [the] DFAS." *Id.* (emphasis omitted). The agency submitted an attachment that it contended "show[ed] hours paid, PLUS each Leave and Earning statement for each pay period in question, showing all deductions and benefits paid by the [G]overnment to the Appellant." *Id.* However, the attachment did not include any leave and earnings statements. *Id.* at 8-13. Instead, it consisted of a spreadsheet pertaining to the appellant's pay for various pay periods, which did not contain any entries for the majority of the relevant time period from March 29 through July 23, 2016.[2] *Id.* at 8-13. The spreadsheet appeared identical to the spreadsheet that the agency submitted in response to the compliance initial decision on September 18, 2017. *Compare* CRF, Tab 3 at 4-9, *with* CRF, Tab 8 at 8-13. Further, the total amount of gross and net pay due to the appellant under the settlement agreement was not clear, and the agency did not set forth its methodology for calculating those amounts. CRF, Tab 8 at 8-13.

¶7    The agency also submitted a spreadsheet pertaining to the appellant's 2016 leave balances, which appeared to reflect that the appellant accrued 6 hours of annual leave and 4 hours of sick leave during the relevant time period from March 29 through July 23, 2016. CRF, Tab 8 at 14. This spreadsheet again appeared identical to a spreadsheet that the agency previously submitted during enforcement proceedings before the administrative judge. *Compare* CF, Tab 15 at 11, *with* CRF, Tab 8 at 14. The spreadsheet did not, however, indicate how the agency calculated the annual or sick leave due to be restored to the appellant or the total amount of annual and sick leave that the agency restored to the appellant.[3] CRF, Tab 8 at 14. Finally, the agency's response to the Clerk of the

---

[2] Most of the entries on the spreadsheet appeared to pertain to the appellant's pay for pay periods after July 23, 2016, which is irrelevant because it post-dates the back pay period. CRF, Tab 8 at 8-13.

[3] In a pleading submitted in response to the Clerk of the Board's January 18, 2018 Order, counsel for the agency represented that when the agency restored an unspecified

Board's January 18, 2018 Order did not address the appellant's TSP contributions, employer retirement contributions, or FEHB and FEGLI premiums. CRF, Tab 8.

¶8 In a March 15, 2018 reply to the agency's response, the appellant argued that the agency did not comply with the Clerk of the Board's January 18, 2018 Order and that the agency was also not in compliance with the settlement agreement. CRF, Tab 9 at 4-8. The appellant submitted a declaration under penalty of perjury, in which she asserted that she had received direct deposits from the agency, which she assumed were back pay, but that she did not know how the back pay was calculated or whether the agency had provided her with the correct amount of back pay. *Id.* at 10. The appellant also represented that she had "hours randomly added" to her pay stubs, which she assumed were restored leave, but that she did not know how the leave was calculated or whether the agency had provided her with the correct amount of leave. *Id.* In addition, the appellant asserted that, based on her review of her TSP statements, the agency did not restore her TSP benefits. *Id.* Finally, the appellant represented that, on February 23, 2018, she contacted her health insurance company and was informed that her coverage was terminated from April 2 through November 12, 2016, and that she was reenrolled from November 13, 2016, onwards, but not retroactively. *Id.*

¶9 On May 30, 2018, the Clerk of the Board issued an order explaining that the agency's responses were still insufficient to determine whether the agency was in compliance with the settlement agreement. CRF, Tab 10 at 6. The Clerk of the Board again directed the agency to submit detailed narrative explanations of the

amount of annual leave to the appellant on an unspecified date, 40.75 hours of the appellant's annual leave was forfeited because she exceeded the 240 hour annual carry-over maximum. CRF, Tab 8 at 5. The agency submitted an attachment that appeared to reflect that the 40.75 hours of forfeited leave was restored to the appellant on May 28, 2017. *Id.* at 15-16.

appellant's back pay and benefits. *Id.* at 6-7. The Clerk of the Board further directed the agency to submit narrative explanations addressing: (1) whether the agency afforded the appellant an opportunity to elect retroactive reinstatement of her health insurance benefits for the period from March 29 through July 23, 2016, and if so, whether the appellant elected retroactive reinstatement of her health insurance benefits for this time period; (2) if the appellant elected retroactive reinstatement of her health insurance benefits for the period from March 29 through July 23, 2016, the steps that the agency had taken to reinstate the appellant's health insurance benefits for this time period, and whether those steps resulted in reinstatement of the appellant's health insurance benefits; (3) whether the agency was obligated to afford the appellant the opportunity to elect retroactive reinstatement of her health insurance benefits for the period from July 24 through November 12, 2016, and if so, why; (4) if the agency was obligated to afford the appellant the opportunity to elect retroactive reinstatement of her health insurance benefits for the period from July 24 through November 12, 2016, whether the appellant elected retroactive reinstatement of her health insurance benefits for this time period; and (5) if the appellant elected retroactive reinstatement of her health insurance benefits for the period from July 24 through November 12, 2016, the steps that the agency took to reinstate the appellant's health insurance benefits for that time period and whether those steps resulted in reinstatement of the appellant's health insurance benefits. *Id.* The Clerk of the Board also stated that, if the agency's responsive submission did not address each of the aforementioned issues, the agency was required to submit biweekly status reports detailing its efforts to reach compliance and progress in doing so. *Id.* at 7. The Clerk of the Board stated that, to the extent the agency contended it needed to obtain information from the DFAS in order to respond, it must provide details of its efforts to obtain that information from the DFAS. *Id.* at 7-8.

¶10 On June 14, 2018, the agency submitted its first biweekly status report, pursuant to the May 30, 2018 Order. CRF, Tab 11 at 1. In its report, the agency

stated that it had assigned a subject matter expert (SME) to review the matter on behalf of the agency. *Id.*

¶11 On June 21, 2018, the Clerk of the Board issued an order acknowledging the agency's first biweekly status report. CRF, Tab 12 at 1-2. The Clerk of the Board noted that the agency's report did not provide any information describing the agency's efforts toward obtaining the required detailed narrative explanations and supporting documentation prior to retaining the SME and did not address any efforts by the agency towards obtaining evidence and information from the DFAS prior, or in addition, to retaining the SME. *Id.* The Clerk of the Board ordered the agency to continue to comply with the May 30, 2018 Order, and to submit either the detailed narrative explanations and supporting documentation required by the order or biweekly status reports detailing the agency's progress and efforts to do so. *Id.* at 2. In the event the agency chose to file another biweekly status report, the Clerk of the Board further ordered the agency to address in the report: (1) the date that the agency anticipated that the SME Management Analyst would complete the audit referenced in the June 14, 2018 biweekly status report; (2) the agency's efforts towards obtaining the required detailed narrative explanations and supporting documentation prior to retaining the SME Management Analyst; and (3) the agency's efforts towards obtaining evidence and information from the DFAS prior to retaining the SME Management Analyst. *Id.*

¶12 On June 28, 2018, the agency submitted its second biweekly status report. CRF, Tab 13. In the status report, the agency provided additional details regarding its attempts to reach compliance, including details of its efforts to obtain necessary information from the DFAS.[4] *Id.* at 4-6. The agency stated in

---

[4] In the report, the agency asserted that disclosure of the name of the individual completing an audit of its compliance attempt was protected by the deliberative process privilege. CRF, Tab 13 at 4. Because we find the agency to be in compliance, we do not address the agency's contention regarding privilege.

the report that it anticipated its audit of its compliance efforts could take as long as 10 weeks. *Id.* at 5.

¶13     Between July 12 and December 14, 2018, the agency submitted multiple biweekly status reports in which it only stated it had "nothing significant to report" regarding its attempts to reach compliance. CRF, Tabs 14-25. On April 12, 2019, the agency submitted its 15th status report, indicating that it had been engaged in mediation with the appellant regarding its compliance issues. CRF, Tab 26 at 4.

¶14     On May 8, 2019, the agency submitted its 16th biweekly status report. CRF, Tab 27. In the report, the agency reported that its audit revealed a discrepancy of 40.75 annual leave hours for the appellant and provided details regarding the origin of the discrepancy. *Id.* at 4-5. The agency indicated that it spoke with the appellant's representative about the discrepancy and that the appellant's representative indicated the appellant wanted those annual leave hours added to her current leave record. *Id.* at 5.

¶15     On July 16, 2019, the agency submitted its 17th status report. CRF, Tab 28. In the report, the agency provided additional narrative details of its compliance audit received from the DFAS. *Id.* at 4-5. The agency explained that the errors in the appellant's benefits arose out of coding errors and that those coding errors were corrected upon discovery of the errors. *Id.* The agency further explained that, due to the coding errors, the appellant was not able to contribute to her TSP account. *Id.* at 5. The agency stated that an inquiry was made to the appellant as to whether she desired to make up her missed TSP contributions, but the appellant did not respond to the inquiry, so no TSP contributions were withheld for her. *Id.* Finally, the agency stated that, because the appellant expressed a desire to make up her missed FEHB payments, a debt for the missed contributions was created, and a debt letter was mailed to the appellant. *Id.*

¶16     On March 13, 2020, the agency submitted its 18th status report. CRF, Tab 29. This report contained a full narrative description of the appellant's back

pay and benefits received pursuant to the settlement. *Id.* at 4-7. The report detailed the amount of funds received by appellant for the back pay period pursuant to the settlement agreement and further explained the deductions taken from the funds. *Id.* at 5-6. The report also explained the results of the agency's compliance audit and detailed how the agency corrected the errors from its prior attempts to reach compliance, including the previously mentioned restoration of 40.75 annual leave hours and the creation of a debt to account for the missed FEHB payments. *Id.* at 6-7.

¶17 On March 25, 2021, the appellant responded to the agency's last status report. CRF, Tab 30. The appellant indicated in her response that she agreed with the agency's assertion that it had finally fully complied with its requirements under the settlement agreement. *Id.* at 4.

## ANALYSIS

¶18 A settlement agreement is a contract and, as such, will be enforced in accordance with contract law. *Burke v. Department of Veterans Affairs*, [121 M.S.P.R. 299](#), ¶ 8 (2014). The Board will enforce a settlement agreement that has been entered into the record in the same manner as a final Board decision or order. *Id.* When the appellant alleges noncompliance with a settlement agreement, the agency must produce relevant material evidence of its compliance with the agreement or show that there was good cause for noncompliance. *Id.* The ultimate burden, however, remains with the appellant to prove breach by a preponderance of the evidence. *Id.*

¶19 The agency's outstanding compliance issues were its obligations to: (1) purge from appellant's eOPF all references to her March 29, 2016 removal; and (2) retroactively restore her employment and benefits for the period of March 29, 2016, through July 23, 2016. CID at 6-7. The agency's multiple submissions demonstrate that it has now met all of its obligations. The September 18, 2017 submission established that the agency finally issued a

corrected SF-50, which accurately reflected the appellant's resignation date. CRF, Tab 1 at 4, Tab 2 at 4. The same September 18, 2017 submission indicated that the agency also provided the appellant with the requisite back pay for the relevant time period. *Id.* And while that submission lacked the necessary details and narrative explanation of the retroactive back pay and benefits, the agency sufficiently explained the details of the back pay and benefits and its corrections to its original errors regarding the back pay and benefits in its 16th, 17th, and 18th status reports. CRF, Tabs 27-29. Moreover, the appellant's March 25, 2021 submission indicates that she agrees that the agency has met all of its outstanding compliance obligations. CRF, Tab 30 at 4.

¶20    Accordingly, in light of the agency's evidence of compliance and the appellant's statements of satisfaction, the Board finds the agency in compliance and dismisses the petition for enforcement. This is the final decision of the Merit Systems Protection Board in this compliance proceeding. Title 5 of the Code of Federal Regulations, section 1201.183(c)(1) (5 C.F.R. § 1201.183(c)(1)).

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE OF APPEAL RIGHTS[5]

You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**.  This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision.  5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. ____ , 137 S. Ct. 1975 (2017).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and

to waiver of any requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[6]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:                    /s/ for
                                  Jennifer Everling
                                  Acting Clerk of the Board
Washington, D.C.